Case No. 17-6034 and Case 17-6079 Tamarin Lindenberg et al. v. Jackson National Life Insurance Company Argument not to exceed 15 minutes per side. Mr. Carey, you may proceed. May it please the Court, Will Perry, the Memphis Bar, on behalf of Defendant, Appellant, Jackson National Life Insurance Company, if I may, a few minutes before my time starts, just lay out what I believe will be the order of operations here, as the Court is aware that the State of Tennessee has intervened in this action. Excuse me, would the Clerk turn the light on, please, and would you like to reserve any time for rebuttal? Yes, Your Honor, I would like to reserve two minutes for rebuttal. The State has intervened in this action, and so Jackson National and the State would like to allocate 10 of their shared 15 minutes to Jackson National and the remaining 5 to the State. I believe the order will be that Jackson National will go, Plaintiff's Counsel will go, Jackson National will have the opportunity to rebut, then the State's Counsel will go, and then the Plaintiff's Counsel will get to rebut the State. I believe it's the way that that will go, with the Court's permission. And I would like to reserve, again, two of my 10 minutes for rebuttal. All right. Thank you, Your Honor. This case comes to this Court following a convoluted procedural history that included a jury trial and certified questions to the Tennessee Supreme Court. But the three issues before this Court are straightforward. First, the District Court erred when it dismissed Jackson National's interpleader complaint and simultaneously granted the relief that the complaint requested by telling Jackson National who to pay, and then subsequently instructed the jury that the complaint had been dismissed because there were no adverse claims to the policy proceeds. It is undisputed that the waivers that resolved those adverse claims were not executed until six months after Jackson National filed its interpleader complaint. When did you first argue to the District Court that it could not rely on waivers in ruling on the motion to dismiss? Yes, Your Honor. So we argued in our motion that the use of the waivers was inappropriate. You will note in the trial court record, and I'll cite you to the trial transcript, it's ECF number 182, and you can start at page ID number 2928. Jackson National's trial counsel told the court that it could not consent to the jury instruction there because it did not want to give away its right to challenge the dismissal and the District Court's reliance on the waivers there. And you can see there is a quote there. All I'm saying, Your Honor, is I don't want it to later be said, if this goes up on appeal, that we waive the objection to what happened on that dismissal. Second, Your Honor. And you think that that preserves your right that the District Court cannot rely on the waivers in ruling on the motion to dismiss? That's correct, Your Honor. You have to understand, and of course the court understands, that until the District Court dismissed Jackson National's interpleader complaint, we did not know that the District Court would rely on the waivers as the basis for that dismissal. And the same order that dismisses Jackson National's interpleader complaint also orders Jackson National to pay the policy proceeds to the plaintiff, which, of course, the District Court could not have had authority to do if the interpleader complaint had been dismissed. Am I confused, or is it only reversible error if the parties didn't have the opportunity to present pertinent materials and you had that opportunity? Isn't that correct? Well, Your Honor, I will respond to that in two ways. So first, if the dismissal had been under Rule 56 rather than Rule 12, that would be correct. So Jackson National should have had the opportunity to submit rebuttal evidence to the extrinsic evidence, the waivers, on which the District Court relied. Because this was a pleading-stage dismissal, what was at issue was the pleading sufficiency of Jackson National's interpleader complaint. And because the interpleader complaint pleaded adverse claims to the policy proceeds, it was sufficiently pleaded. The interpleader statute, of course, that's 28 U.S.C. Section 1335, required that Jackson National actually be threatened, of course, by adverse claims. And it was. That's why the District Court couldn't dismiss the interpleader until after the waivers of the minor children had been executed. And that did not take place until six months after Jackson National filed its interpleader complaint. So in dismissing the interpleader complaint and relying on the waivers, the District Court relied not only on extrinsic evidence, but on evidence that did not exist at the time that Jackson National filed its interpleader complaint. Was Jackson National not providing the waivers, drafting? That's correct, Your Honor. And wasn't there considerable delay in providing those? There was, Your Honor, but there was delay because the plaintiff never told us who she wanted to waive the claims. The plaintiff first submitted a claim for the policy proceeds in February of 2013. Jackson National wrote her in March and said there are three options. We can pay you, we can pay your minor children, or we can interplead the funds. She never told us which one she wanted to do. And she asked us it is undisputed on at least three separate occasions not to interplead the funds. She cannot now cite that delay, which she occasioned, as evidence of bad faith. Your Honor, I also want to move to the fact that the District Court, and even allowing the plaintiff to pursue punitive damages, disregarded this court's 2012 precedent in Heil Company versus Evanston Insurance Company. This court held and published that Tennessee's bad faith statute, quote, precludes punitive damages because it supplies the exclusive extra contractual remedy for an alleged failure, for an alleged bad faith failure to pay on a policy. So that's right, but this is a diversity case. And so what do we do when we have a binding published opinion, no question about that, and whether or not the District Court was required to follow that, it doesn't much matter right now, because what we need to decide is whether or not we are allowed to overrule it. So what would be your argument about whether or not this court can overrule Heil? Absolutely, Judge Larson. The answer is no, this court cannot overrule Heil. And it's important to note, first of all, that Riad, which is the Tennessee Court of Appeals case, that plaintiff suggests is in conflict with Heil, actually does not say that Heil was wrong. What the Riad Court of Appeals said is that Heil did not take into account Tennessee Supreme Court precedent in Mint versus Allstate. Now, Mint has been legislatively reversed. It was legislatively reversed before Heil. And even the District Court in this case recognized that the facts at issue in Mint and also in Riad were not the same as the facts at issue here. In both Mint and in Riad, not only was a breach of contract claim at issue, but also claims under the Tennessee Consumer Protection Act. Similarly, in Montese versus Nationwide, which the plaintiff cites in our principal brief, the claims at issue were Tennessee Consumer Protection Act, negligent infliction of emotional distress, and a breach of contract. So the principle that can be derived from those cases is that when a breach of contract is accompanied by tortuous or quasi-tortuous conduct, then and only then are punitive damages available. In fact, the Riad Court of Appeals ---- But didn't the Mint ---- I understand what you're saying. I know the Tennessee legislature came back and responded. But wasn't the effect of holding in Mint that there's nothing in the bad faith statute that limits and ensures remedies to those provided in the bad faith statute? That's correct. And didn't Riad, didn't the Tennessee Court of Appeals say, you know, Sixth Circuit, you ignored the Mint line of cases. And so let Tennessee clear up what you did in error. And in a diversity case, it's Tennessee law we're looking to, correct? That is correct, Your Honor. So if we're wrong, why does it make any ---- if we inserted something in error that the Tennessee courts have since said, you were incorrect, Sixth Circuit, then it's the Tennessee court that governs this, correct? That is not correct, Your Honor. I see that my time has run out, but I would like to respond to your question. So first of all, this court can depart from its own precedent only when there is a clear indication from the Tennessee courts that it should do something else. There is no precedent from the Tennessee Supreme Court there. There's Riad, and it relies on Mint, which, as you accurately stated, was legislatively reversed. Now, Mint did say before it was legislatively reversed that plaintiffs were not limited to the bad faith statute, that they could simultaneously pursue ---- But wasn't that a limited reversal by the Tennessee legislature? It was absolutely, Your Honor. And that's why it's so important that the district court here recognize that the factual underpinnings of both of Mint and Riad are separate from the facts that were at issue in Heil and in this case. There is no allegation of tortious or quasi-tortious conduct at issue here. And as the Riad Court of Appeals itself recognized, punitive damages generally are not available in breach of contract cases. Only when there is also conduct that is reckless or otherwise meets the standard for punitive damages can punitive damages be awarded. So it's an available remedy? Yes, Your Honor, but only in the narrow circumstances that the Riad Court ---- And that's the question. Yes, Your Honor. You fit the narrow circumstances. We do not, Your Honor. There are no ---- That's a factual question. That's not a legal question. If it's legal that you can make the claim, then the claim is available. And now the determination is whether it's been made. It is a matter ---- It is undisputed, Your Honor, that at issue in Riad and Mint and Montese were claims, in addition to breach of contract, that satisfied the standard necessary to lay a predicate for punitive damages. I see. Oh, I'm sorry. Go ahead. If Riad applies to the timeframe prior to 2011, then that would sort of mitigate against your argument, wouldn't it? Your Honor, that actually would work in our favor. As the Eastern District of Tennessee has held, if Riad and Mint govern pre-2011 claims, then they cannot, in fact, encapsulate the plaintiff's claims, which were not filed until 2013. So, in fact, the timing of Riad and Mint ---- That would simply mean that we would look to Heil rather than ---- That is absolutely correct. And Heil held that the bad faith statute is the exclusive extra-contractual remedy available to plaintiffs so that they can ---- I thought Riad followed Heil. Wasn't it the Tennessee Court of Appeals on 2013? That is correct, Your Honor. So then it did follow. It followed Heil, but it relied on Mint, and Mint was a 1998 case, I believe, and it was legislatively reversed in 2011. And so there is some authority to the effect that Mint continues to govern pre-2011 claims. The plaintiff's claims were asserted in 2013. And so even if you credit that position, Your Honor, plaintiff's claims would not fall under Mint. I interrupted you, Judge Altschulz. No, and also it wasn't Raid, Riad, whatever the name of the case is. That was before the enactment of Section ---- well, the claim accrued before the enactment of Section 113. That is correct. So I have two questions for you. One, do you think ---- I'd like to ask about the Tennessee intermediate court system. Yes, Your Honor. So the argument is that we can overrule our precedent on the basis of one intermediate appellate court decision in Tennessee. What I'd like to know is, is that binding in Tennessee in the ---- assuming that it's on all fours. I understand you think it's on all fours. Yes. If we had a case that was on all fours, is that binding in all of Tennessee until the Tennessee Supreme Court speaks? Or does Tennessee operate in separate districts such that one court can ignore another? It absolutely operates in separate sections. So there's a western section, a middle section, and an eastern section. So if the western section said Heil is wrong and the eastern section said Heil is right, the eastern section would be free to disregard the western section. So one court cannot speak for the whole? That is correct. And it's also correct that this Court's own precedents recognize that even if that were not the case, the decision of an intermediate state court in a diversity case would be persuasive authority only. So even if RIAD could somehow speak for the entire state, which it can't. Well, we have this Hampton decision that seems to suggest otherwise. Of course, that Hampton decision grew out of Michigan, which has a unified court of appeals system. But, I mean, Hampton is pretty strong for the proposition that the court of appeals can speak for the state. It can. And Hampton also, I believe, relied on the district court's decision in Lindenburg. So it's relying on error to help support its arguments in that case, Your Honor. And that's not what that is. Oh, I think we're talking about a different Hampton. That's fine. My second question for you is the district court certified this case once to the Tennessee Supreme Court, only certified the constitutional question. And the Tennessee Supreme Court sent it back saying we're not going to answer just the constitutional question, but if you sent us both questions, the availability of punitives and the constitutional question, we would likely take that. What's your position on, you haven't asked us to certify, what's your position on whether we should certify? We have not. We don't think the court needs to reach the questions of whether the caps are constitutional, because we don't believe that in a case on these facts, particularly under Hile, punitive damages are available as a matter of law. Right. If we stick to our precedent, I think that's true. But your opponent is arguing the precedent doesn't bind us anymore because of raid. Yes, Your Honor. That comes from the Tennessee Court of Appeals. That's correct, Your Honor. We don't think that the court should reach that issue. But, of course, it would be better to allow the state high court to opine on that question if the court should reach it. We have the right to choose to look to the Tennessee Court of Appeals, correct? That is correct, Your Honor. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. My name is Molly Glover, and I'm with the firm of Birch, Porter & Johnson in Memphis, and we represent the appellee. Your Honors, as a preliminary matter, I want to speak to one of the last issues that you addressed to Mr. Perry because I believe he misspoke. Tennessee's Court of Appeals system is a unified system, and I wish I had a site that I could give you or some support for that. We'll happily provide it later. But each of our grand divisions are bound by a decision of a court of appeals sitting in that grand division. So, in other words, just to clarify, if the western division decided a case, and then the eastern division would be bound by whatever the western division said until the Tennessee Supreme Court overruled. That is correct. It's unlike in the federal courts where the Sixth Circuit can disagree with the Seventh Circuit. Very much unlike that, yes. Okay. I'm going to ask the State that question, too, since I've gotten two different answers. Thank you. In response to others of the appellant's arguments, we would demonstrate that the district court correctly dismissed the defendant's complaint for interpolator because there were no adverse claimants. And likewise, correctly concluded under Tennessee law that Ms. Lindenburg was entitled to recover both bad faith damages and common law breach of contract damages, including punitive damages. And finally, that the court- It's a Heil distinction. That is- Because Heil did not address common law breach of contract. That is correct. And that is what the claim is here. That is. And then finally, Your Honor, said the district court correctly declined to disturb the jury's verdict when it found there was sufficient evidence to support the jury verdict. On Ms. Lindenburg's cross appeal, we've asserted that the district court erred when it reduced the jury's punitive damages claim to that of two times the compensatory damage award in accordance with TCA 2939-104, which was the legislative cap imposed by the Tennessee legislature. We have urged the court to strike down 2939-104 on constitutional grounds, thus the intervention of the state on that issue. That would be a pretty extraordinary thing for a federal court to do, to strike down a state statute under state constitutional law without hearing from the state courts. It's a unique challenge we have, Your Honor. But that is an issue that we've raised, and it was presented to the Tennessee Supreme Court, and it bounced that issue back to the trial judge, and he made his ruling. So this is why we present it to Your Honors today. Yeah, so do you think, given that they sent it back and said, if you'd send us the antecedent question, because they can't answer a question unless they think it's dispositive. And so since they sent it back and said, if you'd send us the antecedent question about the availability of punitives, should we send that to them? Send both questions to them? I think that's an option this court has, and certainly we don't object to that and think that would be reasonable. And do you think the antecedent question is already answered in Tennessee law? The antecedent question being whether punitive damages, it certainly has been answered by RIAD, and we believe that's predictive of what the Tennessee Supreme Court would do. Is there an argument to be made that the cap under the relevant Tennessee Supreme Court jurisprudence is advisory instead of binding, even though it was treated as mandatory by the trial court, so that if it were merely advisory, the matter could be sent back without the statute being declared unconstitutional? I don't believe that argument has any merit. The statute is clear that the trial court shall reduce the punitive damages award to two times that of the compensatory award or $500,000. If we look at the state Supreme Court cases pertaining to these kinds of issues and see that the Supreme Court has treated these issues as advisory and these statutes as advisory, rather than binding, we could take that into account, wouldn't you say? I think that that would give a lot of us doing this type of work lots of relief if that is considered advisory. And we could return to the day when our trial judge, acting as a juror, could remit cases that it felt were excessive, rather than having to look to this legislative instruction, even advisory, to reduce a jury verdict award. Your Honor, the defendant claims that a parade of horribles happened when the district court dismissed its counter-complaint for interpleader. In dismissing the defendant's action, the district court correctly applied the standard of 22 U.S.C. 1335 and found 10 months after the complaint for interpleader had been filed that there were, in fact, no adverse claimants. It's important to note that the complaint for interpleader was first filed five months after the deadline in the defendant's own policy for it to pay the proceeds, to pay the death benefit. And as our trial court noted, these are the facts that defendant included in its counter-complaint when it claimed it was vexed and couldn't determine who it should pay. It stated that, in its complaint, Ms. Lindenburg was the primary beneficiary of the policy at issue at the time it was issued in 2002, when she was then the wife of Thomas Lindenburg. It pled that the surviving children were named in the policy as the contingent beneficiaries, that thereafter Ms. Lindenburg and Mr. Lindenburg were divorced and executed a marital dissolution agreement, that Thomas Lindenburg died on January 22, 2013, and that the death benefit had become payable, and that Tamara Lindenburg had made a claim to the death benefit, that the MDA, the marital dissolution agreement, was ambiguous, and that Angela Lindenburg Williams, the adult daughter of Mr. Lindenburg from a prior marriage, is the only biological daughter of the decedent. And those were the facts that defendant claimed created the basis for its inability to pay the death benefit. No mention of the minor children. Only to the... The allegation was as to Williams. Well, there was a reference to the minor children in as much as contingent beneficiaries were surviving children. So nothing specifically raised about a concern about the minor children having not been provided for by a policy of insurance that was supposed to have been held by Mr. Lindenburg, according to the MDA. The first issue raised by the defendant is that the district court erred in considering the waivers of the minor children, and Ms. Lindenburg, on a 12B6 standard. And as your honors have noted, that was not raised at the district court level, and we believe has not been preserved. But in any event, that argument has no merit. 22 U.S.C. 1335 gives original jurisdiction to the trial court in interpleader actions only if there are two or more adverse claimants of diverse citizenship, and that they're both claiming entitlement to a specific pool of money or property having a value of greater than $500. There were no facts at the time the court considered the plaintiff's motion to dismiss the interpleader action that the court could have relied on to have found that there were any adverse claimants. And when the court was making its initial threshold determination as to whether it had subject matter jurisdiction under the interpleader statute, that was a crucial determination, whether there were, in fact, any adverse claimants. It's important to note the timing of those waivers and how all that happened. Rather than respond to the motion to dismiss filed by the plaintiff, the defendant was granted a stay in responding, and then jointly moved with the plaintiff to have guardians ad litems appointed who would then waive the rights of the minor children. All that happened while the motion to dismiss was pending. The trial court appointed guardians ad litem under Federal Civil Procedure 17C, not the Tennessee Guardianship Act that the defendants later argued they had been appointed under. But the two guardians ad litems that the court appointed were the same family friends that the plaintiff had asked pre-litigation, could these folks sign these waivers, and they were told by the defendant they could not. The guardians ad litem were appointed. They waived the claims of the minor children. Ms. Lindenburg Williams waived her claims and joined in the motion to dismiss with the plaintiff. When all of that had been done, only then did the defendant respond to the motion to dismiss, arguing at that time that the waivers of the guardians ad litem were insufficient, that they had not met the requisites of the Tennessee Guardianship Act, which the trial court later said never appointed them guardians under the Tennessee Guardianship Act, only under 17C. They never argued that the court shouldn't consider the waivers. What they argued were that the waivers were inconsistent. So for the first time now, we're seeing some argument that a 12B6 standard was violated. At the time the court made its decision as to whether or not there was subject matter jurisdiction under the Interpleader Act, there were, in fact, no adverse claimants. The district court properly found that no real or reasonable fear of exposure to double liability or conflicting claims was present, and therefore it had no subject matter jurisdiction and dismissed the Interpleader Action and ordered the death benefit be paid to Ms. Lindenburg and held for later disposition whether the bad faith and breach of contract actions were viable. Even if we assume that the court improperly considered the waivers, which we don't agree that it did, but if we assume that, the waivers weren't necessary to the ultimate determination as to whether the court had subject matter jurisdiction under the Interpleader statute. In its order, that's document 32 in the record, dismissing the defendant's complaint for interpleader, the district court agreed with Ms. Lindenburg and found that the marital dissolution agreement was not ambiguous, that under the Tennessee Supreme Court decision of Bowers v. Bowers, that it was clear that a marital dissolution agreement or a divorce cannot revoke a beneficiary designation, and that was an important point in the law that in-house counsel for the defendant had failed to recognize at the time he was evaluating the claim. Therefore, on independent grounds, the trial court found that the defendant had no real or reasonable fear of exposure to double liability, and the court reached that conclusion without consideration of the waivers. Finally, we would point out that the dismissal was immaterial to the outcome of the trial. Had the court not dismissed the interpleader complaint, there was no guarantee that the defendant would have been discharged from the litigation. The Interpleader statute itself at 12 U.S.C. 2361 states that once an interpleader is determined to be proper, the district court may, not shall, may discharge the interpleading party from further liability. And as case law has stated interpreting that statute, it makes clear that the stakeholder may be discharged where there are no adverse claimants unless the stakeholder may be independently liable to the plaintiff, which of course was the situation here. Defendant also wrongfully assumes that in denying Ms. Lindenburg's motion to dismiss the interpleader action, that would have somehow equated to a finding of good faith, that it had acted in good faith in its failure to pay her. The jury heard all the reasons the defendant gave for not timely paying her. It heard all the reasons the defendant gave for not timely filing an interpleader action, and they rejected them. It didn't feel that any of those had actually motivated the decision that the defendant made not to pay her. The jury charged that defendant complains about in that the jury was actually told that the court had dismissed the interpleader action. Also told the jury this, that complaints that waivers had been obtained from guardians ad litem for the minor children, the date those waivers had been obtained, so it was clearly within the understanding of the jury that the interpleader complaint had been dismissed, but that also waivers had been obtained. So we believe that that was a neutral jury charge and certainly didn't affect the outcome of the case. Defendant has not been able to establish that the dismissal of the interpleader was improper or that it affected the outcome. Next, the district court properly interpreted TCA 56-7-105 in finding that the plaintiff could recover statutory bad faith damages as well as common law punitive damages on her breach of contract claim. As the court correctly concluded, the statutory failure to timely pay damages are distinct and different from punitive damages. 56-7-105 assesses up to a 25% penalty against an insurer when it fails to pay for a good faith reason, and I can see that I'm out of time. And we've covered that issue to some extent. Thank you. I think I've got two minutes. Thank you. Judge Larson, I'd like to address your question first about the unification of the state trial court system, and I want to be clear here. If there are competing decisions from the Western District of the Tennessee Court of Appeals, Western Division, and the Eastern Division, trial courts in the Western Division must follow the decision of the Tennessee Court of Appeals from that division of the state. Sure, but what I'm asking is if a question first reaches the Western Division, it's the first court in the state to opine on a particular question, and it says the rule is X. Does the Eastern Division say, well, I might be persuaded by the Western Division, or does it say, I am bound by the Western Division? The latter, and it's very similar to the Sixth Circuit. If the Tennessee Court of Appeals decision is published and it comes out first, then subsequent courts must follow it. Thank you. So second, I want to touch on this question about Section 1335 and whether there were adverse claimants that Judge Stranch was mentioning to the Plaintiffs' Counsel. Your Honor, it is clear that there were adverse claimants because the waivers were necessary in order to allow the district court to dismiss the interpleader, and it couldn't have done that. Your opposing counsel says that the court did not dismiss the interpleader based on those waivers. Is that incorrect? That is incorrect. In ECF No. 32, which is the district court's order, and in the subsequent jury instruction to the jury, the district court identifies two reasons that it dismissed Jackson Nationals' interpleader. First, it says that the marital disillusion agreement at issue did not revoke Ms. Lindenburg's status as a primary beneficiary. Second, it says that there were no adverse claims because the minor children had waived any claim from the district court. And how would those instructions have changed if the court had granted summary judgment instead of dismissal? Well, I'll say that in two ways. So first of all, the court could only have dismissed the interpleader properly if it had been at the summary judgment stage. Having dismissed the interpleader at the pleading stage, and because the plaintiff's underlying claims had not yet been adjudicated, the district court had no authority to act beyond that point on the policy proceeds. It could only have done that if there had already been an adjudication of Ms. Lindenburg's claims, and that's what would have allowed it to act. Is that the case if your interpleader claim only made a claim for Williams as the adult daughter and did not, in fact, allege a contradictory claim on the basis of the children? I'm glad you mentioned that, Judge Stranch. So let me say first that Ms. Lindenburg's counsel, and I see that my time is running out. Please, go ahead. Ms. Lindenburg's counsel is correct that Jackson National's interpleader complaint specifically mentioned Angela Williams, but it also stated that the marital disillusion agreement that created the minor children's constructive interest in the policy proceeds was ambiguous. That marital disillusion agreement spoke of a Jackson National policy, but it did not say which policy. It did not identify a policy number. And Tennessee Supreme Court precedent under Holt v. Holt is clear that when a divorce decree or marital disillusion agreement requires a policyholder to maintain a certain amount of coverage for policy benefits and fails to do that, those beneficiaries have a constructive interest in any other policy held by that policyholder. And if that party held the policy as that party was required to do, then that goes away. That's correct. And it is undisputed here that Mr. Lindenburg did not maintain the policy that the marital disillusion agreement required him to maintain for the benefit of the minor children. And that is why they had an interest in the policy proceeds at issue here. And that is why, despite having dismissed Jackson National's interpleader, the district court had to rely on the waiver of the minor children's claims in order to find that there was no adversity. I also want to note, Judge Stranz, to your earlier question that Jackson National, in its judgment as a matter of law, plainly stated in a footnote that the procedural dismissal of Jackson National's interpleader complaint was improper because it relied on the waivers at issue. All right. Thank you. May it please the Court, Joe A. Hillen on behalf of the State of Tennessee. The State is asking this Court to uphold the district court's ruling on the constitutionality of the damage cap. Plaintiff's constitutional challenge addresses a fundamental question, which is whether the damage cap is punishable under the law. Certainly, the legislature has the power to establish legal remedies. But what plaintiff is arguing is that the jury also has this power. Plaintiff claims that if a jury is allowed to make a finding on damages, the legislature cannot place a limit on how much she can recover. That's really no different than saying that the jury can define the legal remedy. The damage cap represents a policy decision by the legislature on the amount of punitive damages that someone can recover under the law. It effectively says that there is no remedy above a set amount. But plaintiff argues the jury can change that remedy, that the jury can award more damages than the law provides. And that's simply not the case. Correct. Well, the jury does not have the ability to decide what remedy the law provides. And what a damage cap does is it says how much damages someone can recover. So when the jury makes a finding, it does not have the ability to award more damages than the law provides. Doesn't that depend upon what the historical tradition is in the State regarding who assesses punitive damages? Well, there's an underlying question of whether somebody can recover under a particular cause of action to see whether the right to a trial by jury even applies. And here there's a question about that, because plaintiff has only shown that in 1840 is when he could first recover punitive damages in Tennessee. That was the earliest case that she could cite to. And I would add there's an underlying question, because here plaintiff is raising a breach of contract case, and that's what she was awarded damages for. And I think Justice O'Connor of the U.S. Supreme Court said that basically until, I think, maybe in the 1950s or so, was when you could first recover punitive damages for a breach of contract. Plaintiff's argument simply does not reflect the law in Tennessee. What about, I noticed that the argument did not include a reference to Carothers v. Tillman, which is a North Carolina 1797 case from the North Carolina Supreme Court, that explains the availability of exemplary damages. It would appear that there is some history between when Tennessee was a part of North Carolina, in North Carolina itself, and in early Tennessee, cases that suggest that it is the province of the jury to determine exemplary damages. If that is the state of the law, of the historical law, doesn't that become a right of a jury trial? Well, I don't think there, I have not found a Tennessee case law, and whether it derives from North Carolina. Well, it derived from North Carolina when Tennessee was a part of North Carolina, because it was preliminary to the Tennessee Constitution. I'm not familiar with that decision, Your Honor, I apologize. But even if it is considered a finding of fact within Tennessee, it still would not be a violation of the right to trial by jury. And why would that be? Is that because the jury would still be allowed to assess punitive damages, it's just, so they aren't taken, that right is not taken away from them, it's just that those punitives are capped at a certain amount by the trial court. Correct, because the jury does not get to award more damages than the law provides. And there's a number of reasons why the statute is constitutional. There's also a non-economic cap in Tennessee, and that statute is also constitutional for the reasons I've said. But punitive damages are special and distinct from non-economic damages, and that was discussed a lot by the district court in this case. In Tennessee, the courts have said that there is no underlying statutory or constitutional right to punitive damages, and that's because punitive damages are a windfall to the plaintiff. They are not intended as compensation, their purpose is to punish the defendant. The plaintiff has no constitutional right to punitive damages, so she can't claim that her rights have been denied by the damage cap. And you relate that, too, to the Tennessee constitutional right to trial by jury. Correct. And isn't that the claim? Yes. And I know that there's some question, federal constitution, but that case also says, but the states can do with their constitution as they deem appropriate. Correct. So you think that even if there is a history of cases when Tennessee was a part of North Carolina and when Tennessee then was initiating its own constitution, that suggest that at that point exemplary or punitive damages were a province of the jury, what is your grounds for saying that that would not change your argument, since the Tennessee constitution was drafted at the time that that was what was done by juries? There's a two-part argument. There's a two-part explanation to that. The first is that the right to a jury trial doesn't even apply if there was no remedy at that time. But the second question looks to what the actual... If there was no remedy for a common law breach of contract? For punitive damages. But Judge Strange is saying that there was, that she has found a case, Carothers, which says there was a right to, that juries did assess exemplary damages in the late 1790s. So I know you haven't read that case, but let's take that as a given, that it was available, an available remedy in 1790. I think the question now is whether the legislature can put a cap on the amount that the jury can assess. Yes, the second part of the analysis is that if the right to a jury trial does apply, there's a question about the scope of the right and what the right actually encompasses. And the state's position here is that even if there is a right to a jury trial, it doesn't include the ability for the jury to award more damages than the law provides. And I would... Does that also govern the right to criminal jury trial, or is that just a civil trial? I believe it's just a civil trial, yes. And the plaintiff makes a number of arguments about how Tennessee is distinguished by the language of its Constitution. She refers to the word inviolate, basically saying that changes, you know, the analysis. I don't think that's the case. The word inviolate does not define what is protected by the Constitutional right. It simply means that the right shall not change over time. And here, no one's... Tennessee has plenary power. Nobody disputes that, but its plenary power operates within Constitutional limits. So aren't we right back to when the Tennessee Constitution was drafted, what was the understanding of the right of a trial by jury? I think even when the Constitution was drafted, there was an understanding that the legislature could define what remedies are available under the law. Within the Constitution. So then if I can find cases or if your opposing counsel provides cases that shows that that was the understanding at law at that time when the Tennessee Constitution was drafted, wouldn't that change the ability to put a cap? I do not believe so. I think even at that time, there was a recognition that the legislature could even eliminate a remedy. So if you can eliminate a remedy, it certainly means you could also place a limit on a remedy that is available. You can eliminate a statutory remedy, but you cannot eliminate a common law remedy. I disagree with that point. There's plenty of case law that says you can abrogate the common law, change the common law, eliminate common law remedies. In other words, could the Tennessee legislature eliminate compensatory damages? We're just not doing compensatory damages for breach of contract. If you have something that qualifies for specific performance, great, but otherwise, no compensatory damages. I think that might present different Constitutional arguments than what we're dealing with here. The problem is why. Why would that be any different if both were resided in the jury's prerogative when the Tennessee Constitution was drafted? Again, I think the legislature has control over what remedies. And whether you eliminate completely compensatory damages I think is a completely different question than one particular type of damages, which is the punitive damages. It's not apparent from my reading of the text of the Tennessee Constitution, but I'm not a Tennessee lawyer. You've said Article I, Section 6 isn't the Tennessee criminal jury trial provision, but there is another provision, I forget what it is, that very clearly deals with criminal jury trial right. And in Tennessee, juries sentenced defendants until 1984, isn't that correct? 1982 when you passed the Judge Sentencing Act. You happen to have run across somebody who did a lot of work on early criminal juries. So I'm pretty sure that's true, and if what the jury did is always what the jury did, then that statute would be unconstitutional too, right? I just don't think there's a situation where... That can't be right. It can't be right that the Tennessee law giving judges the power to sentence criminal defendants is unconstitutional. I don't think so. All right, thank you very much. And the case is submitted.